## A98A2213. GIBBS v. ABIOSE.
### (508 SE2d 690)

ELDRIDGE, Judge.

Appellant Engrid Gibbs was involved in an automobile collision on June 30, 1995[1] with the appellee Fatai Abiose. Gibbs filed suit seeking recovery of property damages to her automobile, rental car expenses, and court costs. During the course of the litigation, Abiose failed to submit to a court ordered deposition, because he contended that Gibbs bought the Porsche 911 Carrera Targa from Peter Uabesia in a wrecked and unrepaired condition and that no additional damages occurred to the Porsche in the collision between him and Gibbs. Due to Abiose's failure to submit to deposition, the trial court struck Abiose's answer and declared him in default as to the issue of liabil-

---

[1] Gibbs initially stated to Abiose's insurer, Allstate Insurance Company ("Allstate"), that the accident occurred on July 7, 1995. Gibbs later notified Allstate that the correct date of the accident was June 30, 1995.

ity. The case was tried before a jury on the issue of damages only.

At trial, the evidence showed the following: Gibbs testified that on June 20, 1995, she purchased a Porsche 911 Carrera Targa from Peter Uabesia, d/b/a Pete's Express Auto, and drove it home. Gibbs further testified that, at the time she purchased the Porsche, it was in good condition and did not have any body damage. Gibbs testified that she did not drive the Porsche again until June 30, 1995, when she drove it from her home to a nearby restaurant. As Gibbs left the restaurant, she was involved in a collision with Abiose. Gibbs testified that she had only driven the Porsche 20 to 30 miles prior to the collision and had not noticed if the speedometer or odometer was working properly.

The police were not called to the scene of the collision between Gibbs and Abiose, and, therefore, there was no investigating police officer's report. However, Gibbs and Abiose exchanged telephone numbers and insurance information. After the collision, Gibbs drove her automobile to the restaurant where she had just eaten dinner and left it to be picked up by a tow truck.

On August 1, 1995, Edward Clayborn Cooley, a total loss adjuster with Allstate, inspected Gibbs' Porsche at Sadisco Salvage Yard ("Sadisco"). After Cooley completed his inspection, he sent a report, which included the vehicle identification number and which described the Porsche's options, to Certified Collateral Corporation ("Certified Collateral") in order to obtain the current market value of the Porsche. When Certified Collateral sent Allstate its report, Certified Collateral indicated on the report that Sentry Insurance Company ("Sentry") had requested the current market value on the same automobile a couple of months earlier for the same physical damage.

Cooley contacted Sentry and discovered that the Porsche had previously been in a collision on May 4, 1995, and that Sentry had paid out their property damage limits of $10,000 and allowed the owner to keep the Porsche. A claims representative of Sentry telefaxed copies of photographs its adjuster had taken of the Porsche after the May 4, 1995 collision. Cooley determined that the right rear end damage shown on the photographs was identical to the damage he had just noted on the Porsche, with the exception of additional rust where the paint had been knocked off.

Cooley contacted George Hill, an independent appraiser, whom Sentry had requested to inspect the Porsche after the May 4, 1995 collision. Hill testified that he had inspected the Porsche at Sentry's request on May 12, 1995. On this date, Hill had photographed the Porsche and wrote a report of his inspection. Hill further testified that at the time of his May inspection that, in addition to the damage to the right rear end, the Porsche was generally in poor condition.

After the June 30, 1995 collision between Gibbs and Abiose, Hill,

at the request of Abiose, went to Sadisco to re-inspect the Porsche. Hill testified that the Porsche involved in the May 4, 1995 collision was the same Porsche involved in the collision between Gibbs and Abiose, as it had the same vehicle identification number. Hill further testified that the damage to the Porsche was identical to the damage he had previously noted on May 12, 1995, with the exception of additional rust. Additionally, the odometer showed the same mileage as when he had inspected the car on May 12, 1995, indicating that the Porsche had not been driven since.[2]

Hill further testified that he had owned his own body shop for 11 years and had often worked on Porsche automobiles, and that in his opinion there was insufficient time for Gibbs' Porsche to be repaired between the May 4, 1995 collision and the June 30, 1995 collision. Hill testified that it would take between six and eight weeks to complete the repair work because it would be necessary to specially order parts, and the damage to the Porsche was extensive. Hill also testified that, in his opinion, the Porsche had not been repaired since the May 4, 1995 collision.

Gibbs called her own expert, David Aria. Aria had not seen the Porsche until it was delivered to his repair facility from the Sadisco lot by Gibbs' attorney. Aria knew nothing about the condition of the Porsche prior to the time it was brought to his lot. Therefore, Aria could not testify as to when the Porsche had been damaged. However, he testified that it could have been damaged on May 4, 1995. Significantly, Aria testified that, whenever the Porsche was damaged, the oil cooler sustained damage, which would have prevented the Porsche from being driven. Aria further testified that, if a vehicle was towed on a flat bed truck, as he towed Gibbs' Porsche, its mileage would not change on the odometer.

The jury returned a verdict in favor of Gibbs, but found damages in the amount of zero dollars. Gibbs appeals.

1. There was no error in the trial court denying Gibbs' motion for judgment notwithstanding the verdict. A trial court is only authorized to grant a j.n.o.v. "[w]here there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict[.]" (Citations and punctuation omitted.) *South Fulton Medical Center v. Poe*, 224 Ga. App. 107, 108 (480 SE2d 40) (1996). Under this standard and the evidence in this case, there was no error in the trial court's

---

[2] The Porsche's odometer showed on both occasions that the Porsche had been driven 69,418 miles. Hill's original report for Sentry stated that the odometer reading was 89,418. However, at trial, Hill explained that a German "6" looks like an "8," and that initially he had misread the number, because it was dark and rainy and a plastic cover was over the windows, making the interior of the car dark.

denial of Gibbs' motion for j.n.o.v.

2. Gibbs contends that the trial court erred in admitting evidence as to liability.

OCGA § 9-11-55 (a) provides in relevant part that when a case is in default, the plaintiff is entitled to judgment "as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury, unless the action is one ex delicto or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages . . . with the right of the defendant to introduce evidence as to damages[.]" "Defenses which go to the right of recovery are not available to the defendant in default even though the same defense may also go to the assessment of damages. [Cit.]" *Whitby v. Maloy*, 150 Ga. App. 575, 576 (258 SE2d 181) (1979). Therefore, Abiose would be entitled to "contest the issue of damages by rigid cross-examination and by the introduction of evidence so long as [such evidence] did not touch on the issue of liability. [Cits.]" *Magnan v. Miami Aircraft Support*, 217 Ga. App. 855, 856 (459 SE2d 592) (1995).

After considering the testimony Gibbs complains of, we conclude that the trial court did not err in allowing it. The challenged testimony that Gibbs' Porsche had been in a collision approximately eight weeks earlier and that the damage to the Porsche after this collision was identical to the damage that existed after the previous collision did not challenge Abiose's liability for any damages which occurred in the collision between Abiose and Gibbs or the right of Gibbs to recover such damages, but went only to the *amount* of damages as shown by the evidence. Accordingly, the testimony was admissible.

3. Gibbs further alleges that the trial court erred in excluding evidence of her damages for towing and storage of the Porsche.

However, the jury found that the damage to Gibbs' Porsche was not caused by the collision between her and Abiose. Accordingly, the exclusion of evidence of towing and storage, if error, would be harmless.

4. Having examined the appellate record in this case, this Court finds that Gibbs' assertion that the trial court erred in becoming a partial arbiter in the parties' controversy and in engaging in unlawful ex-parte communications with defendant's counsel is meritless.

5. Gibbs alleges that the trial court erred in qualifying Hill and Cooley as expert witnesses and in allowing their opinion testimony.

"Generally speaking, nothing more is required to qualify a witness as an expert than to show that, through education, training, or experience, he has special knowledge concerning the matter of science or skill to which his testimony relates." (Citations and punctuation omitted.) *Macon-Bibb County Hosp. Auth. v. Whipple*, 182 Ga.

App. 195, 196 (355 SE2d 83) (1987). "This Court has repeatedly held that it is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular profession as to entitle him to be deemed prima facie an expert." (Citations and punctuation omitted.) *Wingfield v. State*, 229 Ga. App. 75, 84 (493 SE2d 235) (1997).

We find there was sufficient evidence to support the trial court's qualification of both Hill and Cooley as experts in the areas of their opinion testimony. Accordingly, there was no abuse of discretion in the present case.

6. Gibbs asserts that the trial court erred in admitting photographs of the Porsche taken by counsel for Abiose, Hill, and Cooley and in admitting a fax transmission of a photograph which was received by Cooley from Sentry Insurance. Gibbs argues that no foundation had been laid for the introduction of the photographs and that they were not the "best evidence."

The best evidence objection goes to documentary evidence and not to photographs. "[T]he best evidence rule is a rule which is designed to give preferential treatment to the original writing when the contents of a writing are sought to be proved. [Cits.]" *Smith v. State*, 236 Ga. 5, 8 (222 SE2d 357) (1976). "The best evidence rule applies only to writings. [Cits.]" *Perkins v. State*, 260 Ga. 292, 295 (392 SE2d 872) (1990). Therefore, the rule does not apply to photographs. *Smith v. State*, supra. If the best evidence rule applied to photographs, then the negative from which the photograph was printed would be the "best evidence."

A foundation was laid for the introduction of the photographs by testimony showing that the photographs were true and accurate representations of the condition of the Porsche. "[T]he quantum of evidence required to sufficiently identify photographs as true and accurate representations of what they purport to depict is a matter within the discretion of the court. [Cit.]" *Tenant v. State*, 151 Ga. App. 891, 893 (262 SE2d 204) (1979). Contrary to Gibbs' argument, "[i]t was not necessary to show that the witness himself had taken the photographs, or had them in his custody. [Cit.]" *Sackett v. L. L. Minor Co.*, 244 Ga. 375, 376 (260 SE2d 37) (1979).

Accordingly, there was no abuse of discretion by the trial court in admitting the photographs.

7. The trial court did not err in assessing OCGA § 9-15-14 attorney fees against Gibbs and her counsel.

The trial court granted Abiose's motion for attorney fees pursuant to OCGA § 9-15-14 (a) and (b) against both Gibbs and her counsel. The trial court determined that Gibbs and her counsel were put on notice at least as early as April 11, 1996, pursuant to a letter from Abiose's counsel, stating that Gibbs' claim that her Porsche was dam-

aged in the July 7, 1995 collision between the parties to this action lacked substantial justification or any justiciable issue of law or fact, because the damage to the Porsche occurred on May 4, 1995, when Peter Uabesia (who owned the Porsche on May 4, 1995, and later sold the Porsche to Gibbs) was involved in a collision. The plaintiff and her counsel did not drop their claim or position, but continued to pursue their claim or position through trial. Additionally, the trial court found that Gibbs and her counsel could not have reasonably believed that a court would accept their asserted position. The trial court further found that, upon the trial of this case and a review of the evidence presented at trial, the factual issues addressed in Abiose's April 11, 1996 letter were firmly established.

In *Mitcham v. Blalock*, 268 Ga. 644, 648 (491 SE2d 782) (1997), in determining if an award by the trial court of OCGA § 9-15-14 attorney fees was proper, the Supreme Court found "[t]o the extent the trial court's award was based on [OCGA] § 9-15-14 (a), it must be sustained if there is any evidence to support it. [Cit.] To the extent the award was based on [OCGA] § 9-15-14 (b), it must be sustained unless the trial court abused its discretion. [Cit.]" The Supreme Court further found that "[t]he evidence outlined [in that case] was sufficient to support the trial court's award and establishes that the trial court's award was not an abuse of discretion." Id.

Likewise, in this case, the evidence was sufficient to support the trial court's award against Gibbs and her counsel and establishes that the trial court's award was not an abuse of discretion.

8. Gibbs alleges the trial court erred in denying her attorney fees for having (1) to respond to three motions for protective order filed by Abiose regarding his deposition (two motions were withdrawn prior to Gibbs filing a response and the trial court's ruling), and (2) to file her motion to strike Abiose's answer for failure to comply with the court order requiring him to give his deposition.

"Trial judges have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion." (Citations and punctuation omitted.) *West v. Equifax Credit Information Svcs.*, 230 Ga. App. 41, 42 (495 SE2d 300) (1997).

(a) On April 19, 1996, Abiose filed a motion for protective order on the grounds that Gibbs had noticed his deposition to be taken in Atlanta, Georgia, when in fact he resided in Chicago, Illinois. Gibbs never responded to this motion and, prior to the trial court's ruling, served Abiose on May 21, 1996, with another notice of his deposition to be taken in Atlanta, Georgia. Abiose filed a second motion for protective order on May 21, 1996. Prior to Gibbs' response to the motions and prior to any ruling by the trial court, Abiose withdrew his

motions for protective order on May 31, 1996, stating that the parties had agreed to take Abiose's deposition in the Chicago area.

Gibbs did not respond to Abiose's first two motions for protective order, did not make a request for attorney fees, and did not submit evidence as to what her reasonable and necessary attorney fees were. Therefore, this portion of Gibbs' enumeration of error is meritless.

(b) On August 30, 1996, Gibbs served Abiose with a third notice of his deposition which stated that it was to be taken in Atlanta, Georgia. On September 3, 1996, Abiose filed a third motion for protective order requesting the trial court to enter an order that the deposition of Abiose not be taken or, in the alternative that Abiose not be compelled to come to Atlanta. On October 8, 1996, Gibbs filed, for the first time, a response to Abiose's motion for protective order. While Gibbs had requested $750 attorney fees, her counsel did not file an affidavit as to what his reasonable and necessary attorney fees were for having to respond to the motion. On October 11, 1996, the trial court ordered that the parties agree within seven days of October 8, 1996, on a date to take Abiose's deposition in Chicago, Illinois, and that Abiose's deposition be taken within thirty days of October 8, 1996. The order did not grant or deny Gibbs' request for attorney fees for having to respond to the motion.

"A determination of the amount of an award of attorney fees cannot be based on guesswork." (Citations and punctuation omitted.) *Mitcham v. Blalock*, 214 Ga. App. 29, 32 (447 SE2d 83) (1994). Gibbs failed to prove the actual and reasonable cost of her having to respond to Abiose's motion for protective order. Under such circumstances, an award of attorney fees was not authorized, and there can be no abuse of the trial court's discretion in failing to grant her the requested attorney fees. Id.

(c) On May 23, 1997, after the case had been placed on the trial calendar, Gibbs filed a motion to strike Abiose's answer, for entry of a default judgment, and for attorney fees for the failure of Abiose to submit to the court ordered deposition. No set amount of attorney fees was requested, and Gibbs' counsel did not file an affidavit stating what his reasonable and necessary attorney fees were for having to bring the motion. After a hearing, the court entered an order on September 12, 1997, finding that Abiose flagrantly and wilfully defied the terms and conditions of the trial court's previous order, striking Abiose's answer, and finding Abiose in default. Ruling on Gibbs' motion for attorney fees was reserved. Subsequent to the trial court's order, Gibbs filed a renewed motion for entry of default judgment, which was never ruled on by the trial court; such motion was moot due to the entry of the trial court's previous order on September 12, 1997.

After the jury's verdict, Gibbs renewed her request for attorney

fees, and the trial court allowed her to submit an affidavit of her counsel in regard thereto. In Gibbs' counsel's affidavit, he averred that his reasonable and necessary attorney fees were $1,137.50 for having to file his motion to strike Abiose's answer and for entry of default judgment and $437.50 for having to file his renewed motion for default judgment. On March 20, 1998, the trial court denied Gibbs' request for attorney fees.

There was no abuse of discretion by the trial court in denying Gibbs' motion for attorney fees for having to file her renewed motion for default judgment, as the filing of such motion was unnecessary because the trial court had already struck Abiose's answer and declared him in default as to the issue of liability.

Further, there was no abuse of discretion in the trial court denying Gibbs' motion for attorney fees for having to file her motion to strike Abiose's answer and for entry for default judgment. The ultimate sanction had already been granted by the trial court, i.e., the dismissal of Abiose's answer and the entry of a default judgment as to liability. Further, at the time of the trial court's ruling, the trial court had determined that Gibbs had pursued a claim that both she and her counsel knew lacked substantial justification or any justiciable issue of law or fact. To grant an award of attorney fees under these circumstances would be unjust. See OCGA § 9-11-37 (b). The trial court did not err in denying Gibbs' request for attorney fees.[3]

9. This Court, having found in Divisions 1, 7, and 8 that the trial court properly: (1) denied Gibbs' motion for j.n.o.v.; (2) granted Abiose's motion for OCGA § 9-15-14 attorney fees; and (3) denied Gibbs' request for attorney fees, did not commit any error in denying Gibbs' motion to amend the finding of facts and to vacate these orders or in denying her motion to set aside these orders.

10. The trial court did not err in denying Gibbs' motion for new trial.

In addition to a sufficiency of the evidence argument, Gibbs raised several additional arguments in her motion for new trial, all of which have been decided adversely to Gibbs in the previous divisions of this opinion, with the exception of her allegation that the trial court erred in its charge to the jury.

(a) While Gibbs made a broad general allegation in her motion for new trial that the trial court erred in the charge, she did not point to any portion of the charge that she thought was error. Further, on

---

[3] Gibbs also alleges in a separate enumeration of error that the trial court erred in denying her motion for litigation expenses and attorney fees. However, the record does not show that she ever requested any additional attorney fees or litigation expenses. Further, Gibbs did not submit evidence of what such reasonable and necessary attorney fees may have been.

appeal Gibbs' brief in argument, citation to the record, and authorities do not address any error that the trial court may have made during the charge. Therefore, any error Gibbs may allege occurred in the charge to the jury is abandoned under Court of Appeals Rule 27 (c) (2) (3). *Dalton v. Vo*, 230 Ga. App. 413 (497 SE2d 245) (1998).

(b) "The appellate court will not disturb the trial court's refusal to grant a new trial if there is any evidence at all to support the verdict, however slight, and regardless of what may be the character of the witnesses. Our function is to review the sufficiency of the evidence, and not to determine its weight. Though the evidence might have authorized a different verdict or the verdict is supported by only slight evidence or the evidence is conflicting or preponderates against the verdict[,] where no material error of law appears, this court will not disturb the trial judge's judgment in overruling the motion for new trial. (Citations and punctuation omitted.)" *Haynes v. McCambry*, 203 Ga. App. 464, 465 (416 SE2d 893) (1992); *Locke v. Vonalt*, 189 Ga. App. 783 (377 SE2d 696) (1989). Under the facts of this case, the trial court's denial of Gibbs' motion for new trial was not an abuse of discretion.

11. Abiose's motion to assess frivolous appeal damages and Gibbs' motion for sanctions against Abiose for the filing of the motion for frivolous appeal are denied.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 26, 1998 —
RECONSIDERATION DENIED NOVEMBER 12, 1998

*Kunle Ogundele*, for appellant.
*Fain, Major & Wiley, John K. Miles, Jr.*, for appellee.